UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GILBERTHE JEAN-BAPTISTE and MARIE JEAN-BAPTISTE,<br><br>*Plaintiffs*,<br><br>v.<br><br>NEW YORK TERMINAL 1, INC. a/k/a NEW YORK TERMINAL INC., ELIZABETH NEWARK SHIPPING, INC.<br><br>*Defendants*.<br><br>NEW YORK TERMINAL 1, INC. a/k/a NEW YORK TERMINAL INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>TRAVERTON LTD., BLUE MARLIN CHARTERING NV, and HASETAL MARDEX SCHIFFAHRTS,<br><br>*Defendants*. | Civil Action No. 13-1656 (PGS) (DEA)<br><br><br><br><br><br>**MEMORANDUM AND ORDER** |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on Defendant New York Terminal 1, Inc.'s (hereinafter, "Defendant" or "New York Terminal") Motion for Partial Summary Judgment (ECF No. 8) pursuant to FED. R. CIV. P. 56. In this maritime action, Plaintiffs Gilberthe and Marie Jean-Baptiste (hereinafter "Jean-Baptiste" or "Plaintiffs") seek compensation for damages to a shipment of

personal effects and an automobile carried by sea to St. Marc, Haiti on board an ocean vessel chartered by the Defendant. Defendant seeks a determination that its liability, if any, is limited to $500 per customary freight unit pursuant to the Carriage of Goods by Sea Act, Pub. L. No. 521, § 4(5), 49 Stat. 1207 (1936), reprinted in note following 46 U.S.C. § 30701 ("COGSA"). The Court decides this matter without oral argument pursuant to FED. R. CIV. P. 78(b). For the reasons set forth herein, Defendant's Motion for Summary Judgment is denied.

I. BACKGROUND

Plaintiff Gilberthe Jean-Baptiste and Marie Jean-Baptiste are a daughter and mother residing in Neptune, New Jersey. (Compl. at Count I, ¶ 1). New York Terminal 1, Inc. is a corporation located in Bayonne, New Jersey, which is engaged in the business of shipping or arranging for property to be shipped to Haiti. (*Id*. at Count I, ¶ 2). In 2012, Plaintiffs engaged the Defendant to ship to Haiti (1) a 1988 Toyota Land Cruiser they had previously purchased for $9,450.00 and (2) personal effects stored within the vehicle valued at approximately $30,000.00. (*Id*. at Count I, ¶¶ 5, 7, 11). According to the Plaintiffs, "Defendant[] represented that [it] shipped automobiles to Haiti in the regular course of [its] business and would be able to do this work successfully." (*Id*. at Count I, ¶ 6). The Defendant further represented that "Plaintiffs' items would arrive safely in Haiti." (*Id*.). New York Terminal charged the Plaintiffs $1,480.00 to ship the automobile with the personal effects inside and represented that the automobile would be shipped "on or about August 2012." (*Id*. at Count I, ¶¶ 8-9). Based on this representation, Plaintiffs made accommodations for the vehicle to be picked up from the port in St. Marc, Haiti. (*Id*. at Count IV, ¶ 3).

Despite its representation as to the shipping date, the Defendant failed to ship the automobile in August 2012. After initially evading questions from the Plaintiffs regarding the next shipment date, Defendant represented that the items would be shipped in September 2012. (*Id*. at Count I, ¶

13). At this point, the Plaintiffs allegedly "requested their money back [but] were met with assurances by the Defendant[] that the items would be shipped in a timely fashion." (*Id.* at Count IV, ¶ 5). The items were finally shipped from Bayonne between October 22 and 26, 2012 on board the ocean vessel M/V ANNE and arrived in St. Marc, Haiti on October 31, 2012, approximately three months after the initial date promised by the Defendant.[1] The automobile was "totally unpackaged" during transport and, according to the Defendant, the "ocean freight agreed upon by Plaintiffs and [New York Terminal] was based upon a lump sum rate for the one automobile and contents." (Def.'s Mem. in Supp. of Mot. for Partial Summ. J. ("Def.'s Br.") at 1). Defendant claims to have been the carrier and Charterer of the M/V ANNE. (*Id.*).

According to the Plaintiffs, when the items arrived in Haiti, "the automobile was completely totaled and all of the consumer goods [stored within the vehicle] had been destroyed." (Compl. at Count I, ¶ 14). Plaintiffs attempted to contact the Defendant for an explanation as to what happened to the shipment, however, Defendant failed to respond.[2] (*Id.* at Count I, ¶ 15). Furthermore, Plaintiffs incurred an additional $2,700.00 in costs to remove the automobile and personal effects from Haitian customs. (*Id.* at Count I, ¶ 16).

On January 14, 2013, Plaintiffs filed a civil action for damages against Defendant in the Superior Court of New Jersey, Law Division, Monmouth County alleging breach of contract, breach of bailment, unjust enrichment, breach of the covenant of good faith and fair dealing, and negligence. According to the Plaintiffs' Complaint, "[a]s a direct and proximate result of the Defendant['s] actions, Plaintiffs . . . suffered damages, including but not limited to financial loss, loss of economic gain, loss of business opportunity and such other damages as will be determined at

---

[1] The Plaintiff's vehicle was originally scheduled to be carried on the vessel M/V BALTIC SEA, however, "[d]ue to a delay," the shipment was carried on the M/V ANNE. (Affidavit of Joel Bonhommette ("Bonhommette Aff.") at ¶ 4).

[2] In its Brief in Reply to Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment, Defendant stated that the damage to Plaintiffs' vehicle occurred as a result of Superstorm Sandy. (Def.'s Reply Br. at 2).

3

the time of trial." (*Id*. at Count I, ¶ 20). Accordingly, Plaintiffs seek damages, attorney's fees and costs from the Defendant. The Complaint was formally served upon the Defendant by mail on February 25, 2013. (Def.'s Notice of Removal at ¶ 4).

On March 18, 2013, Defendant filed a timely Notice of Removal to remove this action to the United States District Court for the District of New Jersey. On June 18, 2013, Defendant filed the instant motion for a partial summary judgment limiting its potential liability to $500 pursuant to 42 U.S.C. § 30701 (note). In its motion, Defendant argues that its liability as a carrier is limited to "$500 per customary freight unit" because "the automobile was not shipped in packages and the unit of freight charged was one lump sum amount for the one automobile." (Def.'s Br. at 1). Plaintiffs argue in opposition that Defendant's motion should be denied because "there are substantial genuine disputes as to material fact with regard to the applicability of the Carriage of Goods by Sea Act." (Pls.' Br. in Opp. to Def.'s Mot. for Partial Summ. J. ("Pls.' Opp. Br.") at 2-3). Specifically, Plaintiffs contend that that are genuine issues as to (1) whether Defendant is a carrier within the meaning of the COGSA and (2) whether the damages to the Plaintiffs' property occurred during ocean transport. Furthermore, Plaintiffs argue that the entry of partial summary judgment would be premature because no discovery has occurred.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect

the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Id*. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). To do so, the non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. In other words, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor – that no reasonable

jury could find for him, summary judgment is appropriate." *Alveras v. Tacopina*, 226 Fed. Appx. 222, 227 (3d Cir. 2007).

   B.   **The Carriage of Goods by Sea Act**

The Carriage of Goods by Sea Act, Pub. L. No. 521, § 13, 49 Stat. 1207 (1936), reprinted in note following 46 U.S.C. § 30701 ("COGSA"), applies to "all contracts for carriage of goods by sea to or from ports of the United States in foreign trade."[3] Specifically, COGSA "governs bills of lading for the carriage of goods from the time when the goods are loaded on to the time when they are discharged from the ship." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 29, 125 S. Ct. 385, 160 L. Ed. 2d 283 (2004) (internal quotation omitted). Under § 4(5) of the Act, a carrier's liability for damages in connection with the transportation of goods is limited to $500 per package, "or in case of goods not shipped in packages, per customary freight unit . . . unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading." 46 U.S.C. § 30701(4)(5). "[I]n order to apply to a given shipment, the $500-per-package or [customary freight unit] liability limitation provisions of COGSA must be incorporated into the language of the bill of lading[.]" *Granite State Ins. Co. v. M/V Caraibe*, 825 F. Supp. 1113, 1119 (D.P.R. 1993). "Courts have developed two preconditions to invoking COGSA section 4(5)'s limitation on liability. First, the carrier must give the shipper adequate notice of the $500 limitation by including a 'clause paramount' in the bill of lading that expressly adopts the provisions of COGSA. Second, the carrier must give the shipper a fair opportunity to avoid COGSA section 4(5)'s limitation by declaring excess value." *Ins. Co. of N. Am. v. M/V Ocean Lynx*, 901 F.2d 934, 939 (11th Cir. 1990) (citations omitted).

---

[3] The term "foreign trade" is defined within the Act as "the transportation of goods between the ports of the United States and ports of foreign countries." 46 U.S.C. § 30701(13).

The Defendant asserts that COGSA necessarily applies because the shipment in this case originated in a United States port (Bayonne, New Jersey) and was unloaded in a foreign port (St. Marc, Haiti). According to the Defendant, the "dock receipt and bill of lading . . . are evidence of a contract of carriage by sea from a port in the United States . . . to a foreign port[.]" (Def.'s Br. at 1). Furthermore, Defendant contends that the bill of lading under which the items were shipped clearly provides for the application of the COGSA and establishes that the "ocean freight agreed upon by Plaintiffs and [New York Terminal] was based upon a lump sum rate for the one automobile and contents." (*Id*.). While the Court, after viewing the evidence in the light most favorable to Plaintiffs, agrees that COGSA applies to this case because the shipment in issue involved transport between a port of the United States and a foreign port, it is unclear as to whether the bill of lading included a clause paramount expressly adopting the provisions of the COGSA. Here, Defendant produced two different versions of the bill of lading. The first version, attached as Exhibit B to Defendant's Notice of Removal, is dated March 10, 2011, is unsigned and provides: (1) the names and addresses of the involved parties, (2) the names of the ports of landing, loading, and unloading, (3) a general description of the vehicle being shipped in a box titled "PARTICULARS DECLARED BY THE SHIPPER BUT NOT ACKNOWLEDGED BY THE CARRIER", and (4) the total cost of shipment that had been prepaid. (Def.'s Notice of Removal at ¶ 6, Ex. B). The bill of lading also states: "In accepting this Bill of Lading the Merchant* expressly accepts and agrees to all its stipulations on both Page 1 and Page 2, whether written, printed, stamped or otherwise incorporated, as fully as if they were all signed by the Merchant." (*Id*.). The Defendant appears to have failed to attach the referenced second page. The second version, attached as Exhibit B to the Affidavit of New York Terminal President Joel Bonhommette, is also dated March 10, 2011, unsigned, and contains nearly identical information to the earlier version of the bill of lading filed with this Court. This second

version, however, includes the additional notation "SHIPPERS DECLINES $ VALUE (IF NOT DECLARED LIABILITY APPLIES AS PERCLAUSE) $500[.]" (Bonhommette Aff. at ¶ 6, Ex. B). In viewing this evidence in the light most favorable to the Plaintiffs, the Court finds that a genuine issues exists as to whether the bill of lading for the transport of Plaintiffs' automobile expressly adopted the liability limitation provisions of COGSA. While the undisputed evidence in this case indicates that the automobile was not packaged prior to transport to Haiti, this Court cannot determine whether Defendant's liability is limited to $500 per customary freight unit without a clear indication that the bill of lading incorporated the liability limitation provisions of the COGSA. Because the Defendant submitted two different versions of the bill of lading, only one of which makes vague reference to the $500 liability limitation, the Court does not have sufficient evidence with which to make that determination. Accordingly, the Court finds the entry of partial summary judgment to be inappropriate.

In addition, the Court finds that a genuine issue exists as to whether the Plaintiffs had a fair opportunity to declare a higher value for the shipped items. Under the "fair opportunity" doctrine, the COGSA's $500 per package limit is "inapplicable if the shipper does not have a fair opportunity to declare higher value and pay an excess charge for additional protection." *Nippon Fire & Marine Ins. Co. v. M.V. Tourcoing*, 167 F.3d 99, 101 (2d Cir. 1999) (citing *Gen. Elec. Co. v. M.V. Nedlloyd*, 817 F.2d 1022, 1028 (2d Cir. 1987)). "Absent fair opportunity, a carrier loses the benefit of any limitation of liability to which it otherwise might be entitled." *Gen. Elec. Co.*, 817 F.2d at 1028 (citing *Komatsu Ltd. v. States Steamship Co.*, 674 F.2d 806 (9th Cir. 1982)). In determining whether a shipper received a fair opportunity, "[t]he carrier bears the initial burden[.] . . . *Prima facie* evidence of that opportunity is established when it can be gleaned from the language contained in the bill of lading." *Gen. Elec. Co.*, 817 F.2d at 1029. If a carrier is able to demonstrate fair opportunity,

"the burden of proof shifts to the shipper to demonstrate that a fair opportunity did not in fact exist." *Id*.

A carrier can "establish *prima facie* evidence of fair opportunity by showing that the bills of lading: (1) explicitly mention COGSA's $500 per package[] limitation, (2) specifically state that the shipper will have to declare excess liability in order to avoid the limitation and/or (3) specifically incorporate COGSA by name in the bill of lading."*MacSteel Int'l USA Corp. v. M/V IBN Abdoun*, 154 F. Supp. 2d 826, 833 (S.D.N.Y. 2001). "[A]s a bare minimum, clear and unambiguous incorporation of COGSA by name in the bill of lading is sufficient to establish that the shipper had fair opportunity." *Id. See also Ins. Co. of N. Am. v. M/V Xiang He*, 1990 U.S. Dist. LEXIS 10506, at *4 (S.D.N.Y.1990) (finding that bill of lading satisfied fair opportunity test where it explicitly incorporated COGSA and specifically stated that shipper would have to declare excess value in order to avoid COGSA's liability limitations). A carrier may also satisfy its *prima facie* burden where language in the bill of lading incorporates COGSA's provisions and provides space for a shipper to declare excess value. *See Gen. Elec*., 817 F.2d at 1029 (carrier satisfied its burden where bill of lading incorporated COGSA by reference and provided a space for declaring excess value). *See also Nippon*, 167 F.3d at 101 (shipper received fair opportunity where the bill of lading limited liability to $500 per package and provided a space for stating a higher value).

After viewing the evidence in the light most favorable to the Plaintiffs, the Court finds that the Defendant has failed to produce sufficient evidence to establish that Plaintiffs were afforded a fair opportunity to declare a higher value and pay an excess charge. As previously discussed, the Defendants produced two different versions of the relevant bill of lading. Neither version unambiguously states that Plaintiffs were required to declare excess liability to avoid the $500

limitation or specifically incorporates the COGSA by name. Accordingly, the Court finds that the entry of partial summary judgment is inappropriate given the evidence presented.

### C. CONCLUSION

For the reasons set forth above, Defendant's Motion for Partial Summary Judgment (ECF No. 8) is denied. An appropriate Order follows.

## ORDER

This matter having come before the Court on a Motion for Partial Summary Judgment (ECF No. 8) by Defendant New York Terminal 1, Inc.; and for the reasons set forth in this Court's Memorandum dated February 5, 2014;

**IT IS** on this 5th day of February, 2014, hereby:

**ORDERED** that Defendant's Motion for Partial Summary Judgment (ECF No. 8) is **DENIED**.

Date: February 5, 2014                                         *s/Peter G. Sheridan*
                                                               PETER G. SHERIDAN, U.S.D.J.